KRUGER,
*Appellant,*

*v.*

WEYERHAEUSER COMPANY,
*Respondent.*

(16-81-02436; A24489)

660 P2d 192

Michael M. Bruce, Eugene, argued the cause for appellant. On the briefs were Evohl Malagon, Lyle C. Velure and Malagon & Velure, Eugene.

William E. Flinn, Eugene, argued the cause for respondent. With him on the brief were Philip R. McConville and Flinn, Brown & Roseta, Eugene.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

### GILLETTE, P. J.

Plaintiff brought this personal injury action after he was injured by a falling log on defendant's premises. The jury returned a verdict in favor of defendant. Plaintiff appeals, and we reverse.

Plaintiff, who was employed by Jim Bottoms & Sons as a log truck driver, was injured in November, 1979. He had driven a load of logs into the binder-removal station at defendant's Springfield facility, where drivers ordinarily remove the binders and wrappers from their loads. The binder-removal station consisted of a line of heavy posts, approximately 14 to 16 feet high and extending about 54 feet. Truck drivers park their trucks next to this barricade in order to remove the binders and wrappers from their loads before they are unloaded. The barricade provides protection to the drivers from falling logs. At the time of this accident, plaintiff had parked his truck approximately three or four feet from the barricade. He had removed the binders and was removing the wrappers when a log fell from the truck and struck him.

■ The controversy on appeal centers around the meaning and application of certain safety regulations adopted by the Workers' Compensation Department. Plaintiff's complaint alleged violations of those regulations, including the following:

"16-11-2 No machine or dump operator shall dump any load of logs unless there is a sufficient number of binders left in place to secure all logs until after the machine or unloading lines are in place and the load is secured.

"16-11-3 It shall be the responsibility of the owner, lessee, or other person in control of log dumps to assure compliance with rule 16-11-2.

"* * * * *

"16-11-47 Logs shall be securely held to prevent them leaving the load while binders are being released.

"16-11-51 All logs shall be securely held by binders until the unloading machine is in position to hold logs."

The primary question, however, concerns the meaning of a paragraph following rule 16-11-50:

"16-11-50 * * * All binders shall be arranged so they must be released from the side on which the unloader operates. When binders are released by remotely controlled devices and no persons are exposed to the hazards of falling logs, the binders may be released from either side.

"NOTE: The Workmen's Compensation Board may accept alternate means and methods of protecting workmen at binder-removal stations. This acceptance would allow binders to be removed from either side, provided that an equivalent degree of safety is provided and maintained. (See Appendix B)."

Appendix B provides in pertinent part:

"1. In removing binders from log loads on the side opposite the unloading machine, either of the following procedures shall be followed:

"* * * * *

"(2) An approved barricade may be erected and maintained between the load and the driver for removal of the binders, provided the movement of the loaded log truck is limited to one load length beyond the barricade if necessary, and the driver remains in the cab until all logs are contained by the unloading grapple arms.

"NOTE: Any variation from the foregoing conditions or other pertinent rules of safety in places of employment, may be cause to rescind acceptance of the use of this alternate unloading system by the Workmen's Compensation Board."

Defendant contends that its barricade was "approved," because the Accident Prevention Division (APD) periodically inspected its premises and did not issue any citations for violations of the pertinent rules. It presented a letter (exhibit K) from APD stating that its records showed that no such citations had been issued from 1969 to 1979. The trial court concluded that the question of approval by APD was a fact question for the jury and that exhibit K was relevant to that determination. Plaintiff assigns error to admission of that letter and to certain instructions, both given and refused, regarding the safety code.

Plaintiff contends that the letter is irrelevant to any issue in the case. The relevance of the exhibit depends on the meaning of the safety code. Plaintiff argues first that Appendix B, which allows an "approved barricade,"

concerns only the side from which binders must be removed, an issue not involved here, and does not affect the requirements of regulations 16-11-2, 16-11-47 and 16-11-51 that logs be secured before binders are removed. We do not interpret the "Note" following 16-11-50 so narrowly. Although it is not entirely clear, it appears that the note was meant to indicate that alternate means that might be accepted by the Workers' Compensation Board might make the side from which binders are removed unimportant, because the requisite degree of safety is maintained in other ways.

Plaintiff further argues that, even if Appendix B has some application to the facts of this case, it requires an "approved" barricade and that exhibit K is not relevant to whether the barricade at defendant's facility was "approved." It is plaintiff's position that "approval" requires a proceeding as provided in ORS 654.056:

"(1)  Any employer may apply to the director, pursuant to regulations and procedures adopted by the director, for an order granting him a variance from a particular safety or health regulation, rule or standard.

"* * * * *

"(3)  The director may grant a permanent variance only if the employer demonstrates by a preponderance of the evidence that the conditions, practices, means, methods, operations or processes used or proposed to be used by him will provide employment and a place of employment which are as safe and healthful as those which would prevail if he complied with the regulation, rule or standard.

"* * * * *"

The statute also provides that an employer must have an opportunity for a hearing if a variance is denied and that employes must have an opportunity to be heard if a variance is granted.

Defendant does not contend that such procedures were followed but that they are not applicable. Defendant argues that the use of a barricade is not a *variance from* the safety code, because it is an alternative *contained in* the code. It argues that the letter is relevant to the issue of whether the barricade was informally "approved" by the APD.

Our review of the statutory and regulatory scheme convinces us that approval requires some formal action by the Workers' Compensation Department. The "Note" provides that the board "may *accept* alternative means and methods of protecting workmen at binder-removal stations." Appendix B then describes certain alternate means. They are, however, alternate means that must be accepted by the board.

Defendant argues that approval may be informally given by inspection that does not result in a citation for safety code violation, because there is no procedure established for acceptance or approval of alternate means such as the barricade mentioned in Appendix B. We do not agree with defendant that the variance procedure has no application in this situation. ORS 654.056 establishes a procedure for employers to obtain approval of alternate means and methods of protecting the safety of workers. The "Note" following 16-11-50 refers to acceptance of alternate means of providing safety at binder-removal stations. The regulations appear to refer, if indirectly, to the statutory procedure provided for obtaining that acceptance. We hold that defendant was required to comply with the safety code provisions or obtain approval of alternate means providing the same degree of safety. Exhibit K therefore has no relevance to whether defendant had obtained approval of the barricade it erected at its binder-removal station pursuant to ORS 654.056;[1] admission of the exhibit was error.

Plaintiff also contends that it was error for the trial court to refuse to submit to the jury the question of defendant's liability under the Employer Liability Law, ORS 654.305 *et seq.* He also assigns as error the instruction given on comparative negligence, because contributory negligence is not a defense under the Employer Liability Law. *See* ORS 654.335. The court did not err. Plaintiff's complaint states only a claim for negligence; it does not plead a violation of the Employer Liability Law.

Reversed and remanded.

---

[1] Defendant argues on appeal that exhibit K is also relevant to defendant's knowledge of what plaintiff alleged to have been a dangerous condition on defendant's premises. The exhibit was not offered in the trial court on that limited basis and we express no opinion on whether it might have been admissible for that limited purpose.